**No. 24-1939 (L)**
(*Additional captions and signature blocks on inside cover*)

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

ABBVIE, INC., et al.,

*Plaintiffs-Appellants*,

v.

ANTHONY G. BROWN, in his official capacity as Attorney General of the State of Maryland, et al.

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the District of Maryland,
No. 24-cv-01557

_____

## APPELLANTS' RESPONSE TO PETITION FOR REHEARING EN BANC

_____

**No. 24-1949**

_____

NOVARTIS PHARMACEUTICALS CORPORATION, et al.,

*Plaintiffs-Appellants*,

v.

ANTHONY G. BROWN, in his official capacity as Attorney General of the State of Maryland, et al.,

*Defendants-Appellees*,

_____

On Appeal from the United States District Court for the District of Maryland,
No. 24-cv-01557

_____

May 18, 2026

———————————

## No. 24-1978

———————————

PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, et al.

*Plaintiffs-Appellants*,

v.

ANTHONY BROWN, in his official capacity as Attorney General of the State of Maryland, et al.,

*Defendants-Appellees*.

———————————

On Appeal from the United States District Court for the District of Maryland,
No. 24-cv-01557

———————————

MATTHEW S. OWEN, P.C.
MEREDITH M. POHL
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 389-5000
matt.owen@kirkland.com
meredith.pohl@kirkland.com

*Counsel for Plaintiffs-Appellants
AbbVie, Inc.; Allergan, Inc.; Durata
Therapeutics, Inc.; AbbVie Products
LLC; Aptalis Pharma US, Inc.;
Pharmacyclics LLC; Allergan Sales,
LLC*

JESSICA ELLSWORTH
SUSAN M. COOK
MARLAN J. GOLDEN
HOGAN LOVELLS US LLP

ERIN E. MURPHY
MATTHEW D. ROWEN
CHADWICK J. HARPER[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com
matthew.rowen@clementmurphy.com
chad.harper@clementmurphy.com

*Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiff-Appellant
Pharmaceutical Research and
Manufacturers of America*

555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com
susan.cook@hoganlovells.com
marlan.golden@hoganlovells.com

*Counsel for Plaintiff-Appellant*
*Novartis Pharmaceuticals Corp.*

May 18, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................. ii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................ 2

ARGUMENT ................................................................................................ 8

I.    *McCuskey* And This Decision Are Correct...................................... 9

II.   This Court Should Not Repeat Others' Mistakes. ....................... 14

CONCLUSION ............................................................................................ 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

**Cases**

*AbbVie Inc. v. Drummond*,
808 F.Supp.3d 1266 (W.D. Okla. 2025) ................................................................6

*AbbVie Inc. v. Wrigley*,
2026 WL 1133457 (D.N.D. Apr. 27, 2026) ................................................. 5, 16

*AbbVie, Inc. v. Fitch*,
152 F.4th 635 (5th Cir. 2025)....................................................................... 14, 15

*AbbVie, Inc. v. Murrill*,
166 F.4th 528 (5th Cir. 2026)...........................................................................15

*Astra USA, Inc. v. Santa Clara Cnty.*,
563 U.S. 110 (2011) .......................................................................... 3, 4, 13, 14

*Buckman Co. v. Pls.' Legal Comm.*,
531 U.S. 341 (2001)....................................................................................10, 11

*GenBioPro, Inc. v. Raynes*,
144 F.4th 258 (4th Cir. 2025) ...................................................................... 10, 15

*Geo Grp., Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022)..............................................................................10

*Lawrence Cnty. v. Lead-Deadwood Sch. Dist. No. 40-1*,
469 U.S. 256 (1985).........................................................................................10

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819)..........................................................................10

*Moreno v. Bosholm*,
151 F.4th 543, 558 (4th Cir. 2025)....................................................................13

*Novartis Pharms. Corp. v. Johnson*,
102 F.4th 452 (D.C. Cir. 2024) .......................................................................3, 6

*PhRMA v. McClain*,
95 F.4th 1136 (8th Cir. 2024)..................................................................... 14, 15, 16

ii

*PhRMA v. McCuskey*,
  171 F.4th 675 (4th Cir. 2026) ........................................................ *passim*

*Sanofi Aventis U.S. LLC v. HHS*,
  58 F.4th 696 (3d Cir. 2023) ................................................................5, 6

*United States v. Locke*,
  529 U.S. 89 (2000) ...............................................................................15

**Statutes**

42 U.S.C. §256b(a)(4) ..................................................................................3

42 U.S.C. §256b(a)(5) ..................................................................................3

42 U.S.C. §256b(d)(1) ..................................................................................4

42 U.S.C. §256b(d)(2) ...............................................................................3, 4

42 U.S.C. §256b(d)(3) ..................................................................................4

Md. Code, Health Occ. §12-6C-09.1(a)(4) ..................................................7

Md. Code, Health Occ. §12-6C-09.1(c)(1) ............................................ 6, 15

Md. Code, Health Occ. §12-6C-09.1(d) .......................................................7

**Rules**

42 C.F.R. §10.21(a)(1) ................................................................. 4, 13, 14, 16

61 Fed. Reg. 43,549 (Aug. 23, 1996) ...........................................................5

82 Fed. Reg. 1,210 (Jan. 5, 2017) ................................................................4

89 Fed. Reg. 28,643 (Apr. 19, 2024) .......................................................... 14

**Other Authorities**

Br. of U.S. as Amicus Curiae, *AbbVie v. Weiser*, No. 25-1439
  (10th Cir. Feb. 25, 2026), Dkt.32 ...................................................... 4, 14, 17

Br. of U.S. as Amicus Curiae, *AbbVie, Inc. v. Murrill*, No. 24-30645
  (5th Cir. Apr. 7, 2026), Dkt.217 .................................................................17

iii

Opp'n to Pet. for Rhg., *PhRMA v. McCuskey*, No. 25-1054
(4th Cir. Apr. 27, 2026), Dkt.148 ................................................................... 8, 12

U.S. Gov't Accountability Off., GAO-18-480, *Drug Discount Program:*
*Federal Oversight of Compliance at 340B Contract Pharmacies*
*Needs Improvement* (June 2018), https://perma.cc/BK6S-WG5M ......................5

**INTRODUCTION**

Maryland recently joined West Virginia and a rash of other states in enacting a statute that imposes onerous burdens on only those private parties who choose to participate in a federal spending-power program in which Congress gave states no role. As this Court explained in holding West Virginia's similar law likely preempted, such laws not only "specifically target[] … for unfavorable treatment" just those pharmaceutical manufacturers that participate in the federal 340B Drug Pricing Program, but "alter[] the 340B program's fundamental bargain." *PhRMA v. McCuskey*, 171 F.4th 675, 692-93 (4th Cir. 2026). That law, like Maryland's, "likely interferes operationally with multiple aspects of the 340B program," *id.* at 695, but states have no license to interfere with federal programs in that manner. Indeed, the United States has filed several recent amicus briefs explaining that laws like Maryland's H.B. 1056 violate the Supremacy Clause.

*McCuskey* recognized that Congress established the 340B Program and designed a uniform enforcement system for the Program—and that laws like H.B. 1056 intrude on exclusive federal enforcement of the Program's requirements. *See id.* at 693-94. The decision in this case followed from *McCuskey*, and Maryland's petition for rehearing serves only to confirm that full-court review is not called for here (or in West Virginia's case).

Maryland offers no good reason to second-guess *McCuskey*. Like West Virginia did, Maryland invokes decisions of the Fifth and Eighth Circuits. But it never reckons with the shortcomings of those decisions—chief among them being that they never confronted the threshold problem of a state law exclusively regulating participants in a federal spending-power program in which Congress gave states no role. Yet Maryland never addresses the view of the United States that laws like these intrude on federal prerogatives for the same reasons *McCuskey* identified. Both the Fifth and Eighth lacked the benefit of the federal government's views when addressing similar laws, and ongoing proceedings in those circuits offer those courts a chance to course-correct. *McCuskey* focused on how laws like West Virginia's and Maryland's actually work and actually change the obligations of manufacturers who participate in the federal 340B Program. So this Court did well not to repeat those circuits' errors. As *McCuskey* rightly concluded, states do not have the power to rewrite the terms of participation in or interfere with the operation of federal programs in which Congress has given them no role. This Court should deny the petition.

## BACKGROUND

1. Maryland's discussion of the federal 340B Program gives short shrift to how it actually works. The Program "imposes ceilings on prices drug manufacturers may charge for medications sold to specified health-care facilities." *Astra USA, Inc.*

2

*v. Santa Clara Cnty.*, 563 U.S. 110, 113 (2011). But Congress did not and could not compel that result outright. Instead, Congress offered manufacturers a deal. If a manufacturer wants the federal government to provide reimbursement for its drugs when they are furnished to Medicaid or Medicare Part B beneficiaries, then it must agree to "offer" to sell them to certain providers at steeply reduced prices—often as low as a penny per unit. *See Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 456 (D.C. Cir. 2024). Federal law requires a manufacturer to extend that offer to "covered entit[ies]," a statutorily defined universe of healthcare providers. *See* 42 U.S.C. §256b(a)(4).

While covered entities typically serve low-income patients, they are not required to pass on to their patients the cost-savings they achieve by purchasing reduced-price drugs under the 340B Program. They are instead free to sell those drugs to patients and their insurers at full price, pocketing the difference. Recognizing the powerful incentive covered entities would have to maximize full-price sales of drugs purchased at deeply reduced 340B prices, Congress imposed two critical safeguards. First, covered entities "shall not resell or otherwise transfer the drug to a person who is not a patient of the entity"—a prohibition on "diversion." *Id.* §256b(a)(5)(B), (d)(2)(A). Second, Congress forbade "duplicate discounts," meaning that manufacturers cannot be required to provide Medicaid rebates and 340B pricing on the same unit of a drug. *Id.* §256b(a)(5)(A).

3

Congress tasked HHS with administering and enforcing the 340B Program, *see id.* §256b(d)(2)(B)(v), and instructed it to create an administrative dispute resolution ("ADR") process, *see id.* §256b(d)(3). HHS's view is that the ADR regime covers (in relevant part) "overcharge" claims, which HHS interprets to include claims by a covered entity "that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price." 42 C.F.R. §10.21(a)(1). Consistent with Congress's decision to task HHS with "administer[ing] both Medicaid and §340B harmoniously and on a uniform, nationwide basis," *Astra*, 563 U.S. at 120, the agency's jurisdiction to oversee disputes over 340B discounts is exclusive, *see* 42 U.S.C. §256b(d)(1)(B)(vi); 82 Fed. Reg. 1,210, 1,220 (Jan. 5, 2017) (providing for direct enforcement by HHS); Br. of U.S. as Amicus Curiae at 15-16, *AbbVie v. Weiser*, No. 25-1439 (10th Cir. Feb. 25, 2026), Dkt.32 (hereinafter "U.S.Amicus").

2. The 340B Program began as a relatively small star in the federal healthcare constellation. But it has become an enormous part of prescription-drug spending. In 2024, covered entities bought more than $80 billion worth of drugs via 340B. U.S.Amicus.5. Much of that growth stems from covered entities' use of so-called "contract pharmacies" like CVS and Walgreens.

Congress designed the 340B Program to operate only through covered entities; it assigned contract pharmacies no role. Early on, though, HHS announced

4

that a covered entity with no in-house pharmacy should be able to contract with one outside pharmacy to dispense 340B-priced drugs, so that the covered entity would not be excluded from 340B.  61 Fed. Reg. 43,549, 43,550, 43,555 (Aug. 23, 1996).

In 2010, HHS changed course, asserting that covered entities could contract with "an unlimited number of contract pharmacies," whether across the street or across the country.  *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 700, 704 (3d Cir. 2023).  Predictably, the number of contract pharmacies exploded, increasing "twentyfold."  *Id.* at 700.  "What was once a modest payday became a jackpot for covered entities" and contract pharmacies alike.  *McCuskey*, 171 F.4th at 685; *see AbbVie Inc. v. Wrigley*, 2026 WL 1133457, at *2 (D.N.D. Apr. 27, 2026) (explaining how "pharmacies and third-party administrators pocket billions of dollars each year").  But this contract-pharmacy free-for-all dramatically increased the risk of fraud and abuse in the 340B Program, as multiple federal-government reports document.  *See, e.g.*, U.S. Gov't Accountability Off., GAO-18-480, *Drug Discount Program: Federal Oversight of Compliance at 340B Contract Pharmacies Needs Improvement* 43-45 (June 2018), https://perma.cc/BK6S-WG5M.

Many manufacturers individually responded by setting conditions on their 340B offers.  Under many such policies (including those of AbbVie, Novartis, and many individual PhRMA members), covered entities must designate either their in-house pharmacy or, if they lack one, a single contract pharmacy for 340B purposes.

5

If a covered entity refuses to comply with that policy, the manufacturer will not sell to that covered entity at the 340B price. Manufacturers also individually began requiring covered entities to provide claims data or utilization data to help confirm that individuals that covered entities say were 340B-eligible actually were. *See AbbVie Inc. v. Drummond*, 808 F.Supp.3d 1266, 1271-73 (W.D. Okla. 2025).

Initially, HHS tried to prevent manufacturers from imposing those kinds of conditions on their 340B offers. Litigation followed; it ended with both the Third and D.C. Circuits unanimously holding that the 340B statute leaves manufacturers free to impose those kinds of reasonable conditions on their offers to sell 340B-priced drugs to covered entities. *See Novartis*, 102 F.4th at 460; *Sanofi*, 58 F.4th at 703-04.

3. Covered entities' allies responded by enacting state laws that forbid manufacturers that participate in the 340B Program from doing exactly what the Third and D.C. Circuits held federal law allows—namely, conditioning their offers to sell drugs at 340B prices on the covered entity's agreement to limit its use of contract pharmacies and to provide claims data. Maryland's H.B. 1056 is one such law.

H.B. 1056 makes it illegal for a manufacturer to "deny, restrict, prohibit, discriminate against, or otherwise limit the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy that is under contract with … a covered entity." Md.

6

Code, Health Occ. §12-6C-09.1(c)(1). That prohibition applies only to "340B drug[s]," *i.e.*, drugs that have "been subject to an offer for reduced prices by a 340B manufacturer under 42 U.S.C. §256b(a)(1)," and it includes within its ambit "drug[s] that would have been purchased but for the limitation under subsection (c) of this section." *Id.* §12-6C-09.1(a)(4)(i)-(ii). H.B. 1056 also imposes its own set of penalties, including criminal sanctions. *Id.* §12-6C-09.1(d).

H.B. 1056 thus applies *only* to manufacturers participating in the 340B Program. And it expressly demands of manufacturers the exact obligation that federal courts said the 340B statute does not—on pain of criminal penalties, no less.

AbbVie, Novartis, and PhRMA each challenged H.B. 1056 on several grounds. After consolidating their cases, the district court denied preliminary relief. On appeal, this case ran in parallel with these same parties' challenges to West Virginia's contract-pharmacy law. In resolving the West Virginia appeal, the panel majority explained that that state's analogous law is likely preempted because it "directly changes the terms of drug manufacturers' federally created 340B relationships with covered entities" and "interferes operationally with multiple aspects of the 340B program." *McCuskey*, 171 F.4th at 692-93.

Thereafter, the same panel majority held that, under *McCuskey*, the district court here erred as a matter of law in denying preliminary relief. But the panel left

7

it to the district court to determine in the first instance "the propriety of preliminary relief."  Op.7.

## ARGUMENT

Like *McCuskey*, this case does not warrant en banc review.  *McCuskey* correctly concluded that laws like this one are "likely preempted" under both field- and conflict-preemption principles.  *McCuskey*, 171 F.4th at 695.  As Appellants have explained, in doing so, *McCuskey* did nothing "novel" or inconsistent with the arguments before it.  *Contra* Pet.1; *see* Opp'n to Pet. for Rhg., *PhRMA v. McCuskey*, No. 25-1054, Dkt.148 (hereinafter "McCuskey.Response").  Rather, drawing on binding Supreme Court and Circuit precedent, *McCuskey* explained the common-sense rule that states' ability to directly regulate federal programs in which Congress has given them no role is constrained.  And, applying that rule, it concluded that West Virginia's law intrudes on a federal field by "directly alter[ing] the terms of a federal bargain," and conflicts with federal law because it "interferes operationally with multiple aspects of the 340B program."  *McCuskey*, 171 F.4th at 693.  The decision here simply followed *McCuskey*, which was eminently correct.

Maryland's petition provides no reason to think otherwise.  Contrary to the state's sweeping claims, *McCuskey* made abundantly clear that it was not making broad pronouncements about all state laws touching on federal spending-power programs, but was instead confining itself to the particulars of efforts by states to

8

"inject[]" themselves "into the relationship between a federal agency and the entity it regulates." 171 F.4th at 689. Aside from this recent rash of contract-pharmacy laws, such laws are rare. And while *McCuskey* recognized that it was parting ways with two circuits, it explained why those courts failed to appreciate critical legal principles and key details about how laws like H.B. 1056 actually work. 171 F.4th at 695 n.12. Maryland never acknowledges those defects. Nor does it acknowledge the United States' arguments that those decisions erred, or the fact that even some district courts in the Eighth Circuit are loath to follow its decision in *McClain*. In short, *McCuskey* is correct, this decision is too, and the Court should not grant rehearing in either case.

## I.      *McCuskey* **And This Decision Are Correct.**

Echoing West Virginia, Maryland accuses the *McCuskey* majority of creating a "novel theory of preemption" that "did not reflect the arguments of counsel." Pet.1. That is wrong twice over. *McCuskey* relied on settled Supremacy Clause principles—invoked by the parties—to explain why state laws that directly target federal programs raise serious constitutional concerns, and why H.B. 1056 is not the rare such law that passes constitutional muster.

1. *McCuskey* began with the unremarkable observation that "the type of [state] interference matters" when assessing a Supremacy Clause claim. 171 F.4th at 688. Drawing on cases ranging from *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316

9

(1819), to *Lawrence County v. Lead-Deadwood School District No. 40-1*, 469 U.S. 256 (1985), to *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), it identified "[t]he common thread … that the more directly the State targets federal functions, the less Congress needs to say for the state law to give way." *Id.* at 688. In so doing, *McCuskey* correctly noted that there is no "rigid demarcation" between the "concerns animating" intergovernmental immunity and preemption. *Id.* at 688-89; *see Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022) (en banc). Recognizing that they all flow from the Supremacy Clause, the court then explained that those mutually reinforcing principles "counsel skepticism" here because West Virginia's S.B. 325 "facially '*targets* a federal domain.'" *McCuskey*, 171 F.4th at 689 (quoting *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 272 (4th Cir. 2025)).  And it determined that West Virginia's law likely impermissibly intrudes on that federal domain because it "directly changes the terms of drug manufacturers' federally created 340B relationships with covered entities." *Id.* at 692.  Following *McCuskey*, the panel here then held that Maryland's law is "likely preempted" too.  Op.7.

Maryland largely rehashes West Virginia's arguments.  Like West Virginia, Maryland accuses *McCuskey* of ignoring how laws like these involve a "field which the States have traditionally occupied" and suggests that *McCuskey* establishes a preemption framework that applies "simply because the 340B program was an

10

exercise of Congress's Spending Clause authority." Pet.2, 11. Those arguments fare no better here.

*McCuskey* recognized that states have long regulated health and safety, and that such laws typically enjoy a presumption against preemption even in the spending-power context. 171 F.4th at 688-92. It also emphasized that states have greater leeway to regulate in "cooperative federalism" spending-power programs, in which Congress "forge[s] bargains with States" and "invit[es] States to supplement federal conditions with state laws that address local variations and fill gaps." *Id.* at 689. *McCuskey* simply recognized that laws like these are not "traditional health-and-safety regulation[s]," *id.*, because they "target[] only manufacturers that participate in the 340B program"—a program in which Congress gave states no role—and "impose[] restrictions only on drug manufacturers when they comply with their end of the 340B bargain," *id.* at 691. West Virginia's law is thus likely preempted (as is Maryland's) because the state "chose to directly alter the terms of a federal bargain" that Congress struck with private parties, not the states. *Id.* at 693; *see* Op.6-7. That is not a "novel theory of preemption." *Contra* Pet.12. It is a straightforward application of settled principles to anomalous efforts to "inject[] the State into 'the relationship between a federal agency and the entity it regulates.'" *McCuskey*, 171 F.4th at 689 (quoting *Buckman*, 531 U.S. at 347).

Maryland accuses *McCuskey* of "defining the relevant field so narrowly as to preordain the result." Pet.12. But if anything "preordain[ed]" a result here, it was West Virginia's and Maryland's overt efforts to coopt a federal program for their own ends. It is hardly *McCuskey*'s fault that West Virginia and Maryland decided to "facially '*target*[]'" a specific federal program in which Congress gave states no role. *McCuskey*, 171 F.4th at 689. And when states expressly alter the terms of participation in such a program, it is not "tautological" to recognize that the relevant field is the federal program requirements that they exclusively target. *Contra* Pet.2.

Maryland complains that no party argued that "West Virginia's law was preempted on the basis that West Virginia had interfered with the 'bargain' that Congress had created by using its Spending Clause power." Pet.10. That is wrong. *See* McCuskey.Response.13 n.1. Appellants argued that "manufacturers agree to a specific set of obligations in exchange for the opportunity to participate in Medicaid and other programs," and that H.B. 1056 "changes the terms of Congress's deal." Dkt.34 at 34; *see* Dkt.49 at 20 (Maryland's law "fundamentally alters the bargain Congress struck in 340B"). At oral argument, too, Appellants emphasized that "[t]he federal statute in question is … spending-clause legislation," that 340B "has always been spending-clause legislation," and that statutory "silence in this kind of statute means that flexibility is preserved for the manufacturer." No. 24-1939, Oral.Arg.at.2:50, 20:05. In all events, as this Circuit has said, it is a court's "job to

12

get things right." *Moreno v. Bosholm*, 151 F.4th 543, 558 (4th Cir. 2025). *McCuskey* did exactly that, and it did so in a manner fully consistent with—and reflective of— the parties' arguments.[1]

2. Maryland barely acknowledges *McCuskey*'s independent holding that states' contact-pharmacy laws "likely interfere[] operationally with multiple aspects of the 340B program." 171 F.4th at 693; *see* Pet.12-13. The state's reluctance to confront these conflicts is understandable. *Astra* shows that "Congress made HHS the 340B program's sole enforcer," and, as *Sanofi* and *Novartis* recognize, "HHS maintains the power to enforce bona fide offers to covered entities" and to "mediate[] disputes relating to pharmacy delivery policies." *McCuskey*, 171 F.4th at 693-94.

Maryland cites *Astra* only as a "see also" in a footnote. Pet.3 n.2. And Maryland does not give even that limited acknowledgement to the HHS regulation *McCuskey* relied on (namely, 42 C.F.R. §10.21(a)(1)), which funnels private-party claims that a manufacturer has unlawfully limited a covered entity's ability to acquire 340B-priced drugs into one place: the ADR tribunal. 171 F.4th at 694. Under that regulation, HHS makes clear its view that ADR's purview extends to

---

[1] Maryland's *amici* fault Appellants for emphasizing that *McCuskey* is correct and that the United States' briefing bolsters that conclusion. Dkt.95 (AHA.Amicus.Br.) at 2-3, 4-5. But it would be a poor use of this Court's resources to take a correct panel decision en banc. And the federal government's views surely matter in litigation about the balance of federal-state power. *See, e.g.*, *Astra*, 563 U.S. at 119-21 (invoking the United States' amicus briefs eight times).

"claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price," 42 C.F.R. §10.21(a)(1), "includ[ing]" "claims" that a manufacturer imposed "unduly restrictive contract pharmacy policies," *McCuskey*, 171 F.4th at 694 (citing 89 Fed. Reg. 28,643, 28,644 (Apr. 19, 2024)).  Maryland offers not one word in response.  Indeed, Maryland does not even mention §10.21(a).  Perhaps that is because the conflict between Maryland's parallel enforcement regime and HHS's uniform enforcement is undeniable.  *See* U.S.Amicus.15-16.

At bottom, Maryland simply has no way of explaining how H.B. 1056 coheres with Congress's judgment that HHS must "administer both Medicaid and §340B harmoniously and on a uniform, nationwide basis."  *Astra*, 563 U.S. at 120. *McCuskey* recognized what that means here:  By empowering state courts to "provid[e] their own answers" to whether conditions on 340B offers are permissible, H.B. 1056 "necessarily intrudes upon the uniform system of enforcement" Congress envisioned.  171 F.4th at 694.  This Court was correct to recognize as much.

## II.    This Court Should Not Repeat Others' Mistakes.

Like West Virginia, Maryland relies heavily on the fact that two circuits have rejected preemption challenges to similar state laws.  *PhRMA v. McClain*, 95 F.4th 1136 (8th Cir. 2024); *AbbVie, Inc. v. Fitch*, 152 F.4th 635 (5th Cir. 2025) (per

14

curiam); *AbbVie, Inc. v. Murrill*, 166 F.4th 528 (5th Cir. 2026).  But *McCuskey* was right not to follow them.

To start, neither *McClain* nor the Fifth Circuit's decisions even mentioned the fact that the state laws they were considering "facially target[] a federal domain." *McCuskey*, 171 F.4th at 689 (emphasis and quotation marks omitted).  Each instead reflexively applied the presumption against preemption, simply because the state's law touched on health and safety.  But this Court has squarely held that "the presumption against preemption 'is not triggered when' … the state law targets a federal domain." *GenBioPro*, 144 F.4th at 272 (quoting *United States v. Locke*, 529 U.S. 89, 108 (2000)).  Those cases are thus out of step with this Court's precedent (and wrong).

The Eighth and Fifth Circuits also failed to appreciate how laws like H.B. 1056 actually work.  *McClain* accepted Arkansas' representation that its law regulated only the "delivery" of drugs, not when they must be sold at 340B prices. 95 F.4th at 1143-45.  The Fifth Circuit thought similarly.  *See Fitch*, 152 F.4th at 643; *Murrill*, 166 F.4th at 539 ("*Fitch* controls here.").  Maryland now likewise claims that its law relates only to "the delivery of medications." Pet.3.  That is demonstrably incorrect.  On its face, H.B. 1056 prohibits manufacturers from using contract-pharmacy conditions to "directly or indirectly … limit the acquisition of a 340B drug"—*i.e.*, a drug sold at 340B prices. Md. Code, Health Occ. §12-6C-09.1(c)(1).

15

Put differently, H.B. 1056 requires manufacturers to sell drugs at 340B prices even when covered entities refuse to agree to conditions that federal law permits manufacturers to impose. That is the point. *See* JA.252 (Maryland explaining that a manufacturer violates H.B. 1056 whenever it fails to "honor[] the price … that's set forth in the 340B program"). Because the same drugs are already available to the same pharmacies at commercial prices, the sole question is whether manufacturers must provide specific units of those drugs at the steeply reduced 340B price—a question of pricing, not delivery.

Moreover, while *McClain* acknowledged that HHS has "exclusive 340B" jurisdiction over overcharge claims, 95 F.4th at 1144, it did not address HHS's position that the ADR framework covers "claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price." 42 C.F.R. §10.21(a)(1). *McClain*, of course, could not have considered that the agency today actively adjudicates complaints about contract-pharmacy limitations in ADR. No wonder even district courts in the Eighth Circuit have not followed *McClain* when its premises are shown to be mistaken. *See, e.g.*, *Wrigley*, 2026 WL 1133457, at *8-*9.

More fundamentally, both circuits failed to recognize the critical interplay between the 340B Program and Medicare and Medicaid. As the United States has explained, "the federal interest in determining the costliness of Medicare and

16

Medicaid participation could hardly be stronger," U.S.Amicus.22, for "[i]f the costs of participating in these programs outstrip the benefits … rational manufacturers can be expected to withdraw from them," U.S.Amicus.17.  And when manufacturers withdraw from 340B, as one already has, "dozens of drugs" become unavailable to Medicaid patients nationwide.  U.S.Amicus.17.  Both circuits gave little (or no) weight to those strong federal interests—perhaps because they lacked briefing from the United States.  But the United States has now made abundantly clear that laws like H.B. 1056 work impermissible and intolerable interference with not only the 340B Program, but Medicare and Medicaid too.

In considering "potential consequences," Pet.13, the Court should prevent further balkanization of 340B and fallout for Medicare and Medicaid.  Indeed, the United States has urged the Fifth Circuit to go en banc for exactly that reason.  U.S. Br., *AbbVie, Inc. v. Murrill*, No. 24-30645 (Apr. 7, 2026), Dkt.217.  This Court should reject Maryland's invitation to grant rehearing just to exacerbate threats to critical federal programs the United States is actively urging other courts to fix.

17

## CONCLUSION

The Court should deny the petition.

Respectfully submitted,

s/Matthew S. Owen
MATTHEW S. OWEN, P.C.
MEREDITH M. POHL
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 389-5000
matt.owen@kirkland.com
meredith.pohl@kirkland.com

*Counsel for Plaintiffs-Appellants
AbbVie, Inc.; Allergan, Inc.; Durata
Therapeutics, Inc.; AbbVie Products LLC;
Aptalis Pharma US, Inc.; Pharmacyclics
LLC; Allergan Sales, LLC*

s/Jessica Ellsworth
JESSICA ELLSWORTH
SUSAN M. COOK
MARLAN J. GOLDEN
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com
susan.cook@hoganlovells.com
marlan.golden@hoganlovells.com

*Counsel for Plaintiff-Appellant
Novartis Pharmaceuticals Corp.*

s/Erin E. Murphy
ERIN E. MURPHY
MATTHEW D. ROWEN
CHADWICK J. HARPER[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiff-Appellant
Pharmaceutical Research and
Manufacturers of America*

May 18, 2026

18

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,878 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

May 18, 2026

s/Erin E. Murphy
Erin E. Murphy

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Erin E. Murphy
Erin E. Murphy

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 24-1939**

─────────────

ABBVIE, INC., (a Delaware corporation); ALLERGAN, INC., (a Delaware corporation); DURATA THERAPEUTICS, INC., (a Delaware corporation); ABBVIE PRODUCTS LLC, (a Georgia limited liability company); APTALIS PHARMA US, INC., (a Delaware corporation); PHARMACYCLICS LLC; ALLERGAN SALES, LLC, (a Delaware limited liability company),

    Plaintiffs – Appellants,

 and

NOVARTIS PHARMACEUTICALS CORPORATION; PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA; ASTRAZENECA PHARMACEUTICALS LP,

    Plaintiffs,

 v.

ANTHONY G. BROWN, in his official capacity as Attorney General of the State of Maryland; KRISTOPHER RUSINKO, in his official capacity as Board President of the Maryland Board of Pharmacy; DAPHANIE ROBINSON, in her official capacity as a member of the Maryland Board of Pharmacy; ADETORO ORIAIFO, in his official capacity as a member of the Maryland Board of Pharmacy; KRISTEN FINK, in her official capacity as a member of the Maryland Board of Pharmacy; KAREN SLAGLE, in her official capacity as a member of the Maryland Board of Pharmacy; BRENDA OLIVER, in her official capacity as a member of the Maryland Board of Pharmacy; KARLA EVANS, in her official capacity as a member of the Maryland Board of Pharmacy; JAVIER VAZQUEZ, in his official capacity as a member of the Maryland Board of Pharmacy; AKESH PATEL, in his official capacity as a member of the Maryland Board of Pharmacy; KEVIN MORGAN, in his official capacity as a member of the Maryland Board of Pharmacy; JENNIFER HARDESTY, in her official capacity as a member of the Maryland Board of Pharmacy; PEGGY GLASCOE GEIGHER, in her official capacity as a member of the Maryland Board of Pharmacy; NEIL LEIKACH, in his

official capacity as a member of the Maryland Board of Pharmacy; MARYLAND BOARD OF PHARMACY/PRESIDENT,

Defendants – Appellees.

--------------------------------

AMERICAN HOSPITAL ASSOCIATION; MARYLAND HOSPITAL ASSOCIATION; MID-ATLANTIC ASSOCIATION OF COMMUNITY HEALTH CENTERS; 340B HEALTH; AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS,

Amici Supporting Appellees.

---

**No. 24-1949**

---

NOVARTIS PHARMACEUTICALS CORPORATION,

Plaintiff – Appellant,

and

ABBVIE, INC., (a Delaware corporation); ALLERGAN, INC., (a Delaware corporation); DURATA THERAPEUTICS, INC., (a Delaware corporation); ABBVIE PRODUCTS LLC, (a Georgia limited liability company); APTALIS PHARMA US, INC., (a Delaware corporation); PHARMACYCLICS LLC; ALLERGAN SALES, LLC, (a Delaware limited liability company); PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA; ASTRAZENECA PHARMACEUTICALS LP,

Plaintiffs,

v.

ANTHONY G. BROWN, in his official capacity as Attorney General of the State of Maryland; KRISTOPHER RUSINKO, in his official capacity as Board President of the Maryland Board of Pharmacy; DAPHANIE ROBINSON, in her official capacity as a member of the Maryland Board of Pharmacy; ADETORO ORIAIFO, in his official capacity as a member of the Maryland Board of Pharmacy; KRISTEN FINK, in her official capacity as a member of the Maryland Board of Pharmacy; KAREN SLAGLE, in her official capacity as a member of the Maryland Board of

2

Pharmacy; BRENDA OLIVER, in her official capacity as a member of the Maryland Board of Pharmacy; KARLA EVANS, in her official capacity as a member of the Maryland Board of Pharmacy; JAVIER VAZQUEZ, in his official capacity as a member of the Maryland Board of Pharmacy; AKESH PATEL, in his official capacity as a member of the Maryland Board of Pharmacy; KEVIN MORGAN, in his official capacity as a member of the Maryland Board of Pharmacy; JENNIFER HARDESTY, in her official capacity as a member of the Maryland Board of Pharmacy; PEGGY GLASCOE GEIGHER, in her official capacity as a member of the Maryland Board of Pharmacy; NEIL LEIKACH, in his official capacity as a member of the Maryland Board of Pharmacy; MARYLAND BOARD OF PHARMACY/PRESIDENT,

Defendants – Appellees.

------------------------------

AMERICAN HOSPITAL ASSOCIATION; MARYLAND HOSPITAL ASSOCIATION; MID-ATLANTIC ASSOCIATION OF COMMUNITY HEALTH CENTERS; 340B HEALTH; AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS,

Amici Supporting Appellees.

**No. 24-1978**

PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,

Plaintiff – Appellant,

and

ABBVIE, INC., (a Delaware corporation); ALLERGAN, INC., (a Delaware corporation); DURATA THERAPEUTICS, INC., (a Delaware corporation); ABBVIE PRODUCTS LLC, (a Georgia limited liability company); APTALIS PHARMA US, INC., (a Delaware corporation); PHARMACYCLICS LLC; ALLERGAN SALES, LLC, (a Delaware limited liability company); NOVARTIS PHARMACEUTICALS CORPORATION; ASTRAZENECA PHARMACEUTICALS LP,

Plaintiffs

3

v.

ANTHONY G. BROWN, in his official capacity as Attorney General of the State of Maryland; KRISTOPHER RUSINKO, in his official capacity as Board President of the Maryland Board of Pharmacy; DAPHANIE ROBINSON, in her official capacity as a member of the Maryland Board of Pharmacy; ADETORO ORIAIFO, in his official capacity as a member of the Maryland Board of Pharmacy; KRISTEN FINK, in her official capacity as a member of the Maryland Board of Pharmacy; KAREN SLAGLE, in her official capacity as a member of the Maryland Board of Pharmacy; BRENDA OLIVER, in her official capacity as a member of the Maryland Board of Pharmacy; KARLA EVANS, in her official capacity as a member of the Maryland Board of Pharmacy; JAVIER VAZQUEZ, in his official capacity as a member of the Maryland Board of Pharmacy; AKESH PATEL, in his official capacity as a member of the Maryland Board of Pharmacy; KEVIN MORGAN, in his official capacity as a member of the Maryland Board of Pharmacy; JENNIFER HARDESTY, in her official capacity as a member of the Maryland Board of Pharmacy; PEGGY GLASCOE GEIGHER, in her official capacity as a member of the Maryland Board of Pharmacy; NEIL LEIKACH, in his official capacity as a member of the Maryland Board of Pharmacy; MARYLAND BOARD OF PHARMACY/PRESIDENT,

Defendants – Appellees.

------------------------------

AMERICAN HOSPITAL ASSOCIATION; MARYLAND HOSPITAL ASSOCIATION; MID-ATLANTIC ASSOCIATION OF COMMUNITY HEALTH CENTERS; 340B HEALTH; AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS,

Amici Supporting Appellees.

---

Appeals from the United States District Court for the District of Maryland, at Baltimore. Matthew James Maddox, District Judge.  (1:24-cv-01557-MJM)

---

Argued:  September 9, 2025                                     Decided:  April 14, 2026

---

Before RICHARDSON, RUSHING, and BENJAMIN, Circuit Judges.

---

4

Vacated and remanded by unpublished opinion. Judge Richardson wrote the opinion, in which Judge Rushing joined. Judge Benjamin wrote a dissenting opinion.

———————————

**ARGUED:** Matthew Scott Owen, KIRKLAND & ELLIS, LLP, Washington, D.C.; Philip J. Perry, LATHAM & WATKINS, LLP, Washington, D.C.; Jessica Lynn Ellsworth, HOGAN LOVELLS US LLP, Washington, D.C., for Appellants. Ryan Robert Dietrich, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** Ashley C. Parrish, John D. Shakow, Washington, D.C., Nicole Bronniman, KING & SPALDING LLP, Houston, Texas; Meredith M. Pohl, Lucas H. Funk, KIRKLAND & ELLIS, Washington, D.C.; Timothy Maloney, JOSEPH GREENWALD LAAKE, Greenbelt, Maryland, for Appellants AbbVie, Inc.; Allergan, Inc.; Durata, Therapeutics, Inc.; AbbVie Products LLC; Aptalis Pharma US, Inc.; Pharmacyclics LLC; and Allergan Sales, LLC. Catherine E. Stetson, Susan M. Cook, Marlan Golden, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant Novartis Pharmaceuticals Corporation. Andrew D. Prins, Abid R. Qureshi, LATHAM & WATKINS LLP, Washington, D.C., for Appellant Pharmaceutical Research and Manufacturers of America. Anthony G. Brown, Attorney General, Joshua R. Chazen, Assistant Attorney General, Howard R. Feldman, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, for Appellees. William B. Schultz, Margaret M. Dotzel, Alyssa Howard Card, ZUCKERMAN SPAEDER LLP, Washington, D.C., for Amici Curiae.

RICHARDSON, Circuit Judge:

In 2024, Maryland enacted H.B. 1056, which imposes restrictions on drug manufacturers participating in the federal 340B program.[*] Md. Code § 12-6C-09.1. Specifically, the Maryland statute prohibits a "340B manufacturer" from "directly or indirectly . . . limit[ing]" the distribution of "a 340B drug to" a "pharmacy that is under contract with . . . a covered entity," unless required by federal law or regulation. Md. Code § 12-6C-09.1(c)(1). The state law defines "340B manufacturer," "340B drug," and "covered entity" by reference to 42 U.S.C. § 256b, which establishes the 340B program. *Id.* § 12-6C-09.1(a). In short, H.B. 1056 imposes obligations on drug manufacturers solely by virtue of their participation in the federal 340B program and does not regulate manufacturers outside that program.

Plaintiffs—drug manufacturers and an industry trade association—sued to enjoin H.B. 1056's enforcement on several grounds, including that it was preempted by the federal statute. The district court found that the plaintiffs were unlikely to succeed on the merits and denied the preliminary injunction. This appeal followed.

Maryland was not the only state to pass a law that targeted 340B program participants. West Virginia passed a materially similar statute, *see* W. Va. Code § 60A-8-

---

[*] The 340B program is a spending-power bargain between Congress and drug manufacturers. *Pharm. Rsch. & Mfrs. of Am. v. McCuskey*, No. 25-1054, slip op. at 5 (4th Cir. March 31,2026) [*PhRMA*]; 42 U.S.C. § 256b. Manufacturers that "opt into" the 340B program must provide price discounts on drugs sold to specified health-care providers. *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 113 (2011). In turn, these manufacturers gain access to payment under Medicaid for covered drugs. *Id.* at 114–15; *see also PhRMA*, slip op. at 7–8.

6a, which this Court recently held is likely preempted. *PhRMA*, slip op. at 30–31. We also held that the remaining injunction factors supported granting a preliminary injunction. *Id.* at 29; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In light of this Court's decision in *PhRMA*, we hold that the district court erred as a matter of law. *See United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110 (1801); *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 281–82 (1969). We leave it to the district court to determine in the first instance, applying the principles set forth in *PhRMA*, the propriety of preliminary relief.

Accordingly, we vacate the district court's order and remand for further proceedings consistent with *PhRMA*.

*VACATED AND REMANDED*

DEANDREA GIST BENJAMIN, Circuit Judge, dissenting:

When Congress established the 340B program, its "goal was simple: stretch scarce healthcare dollars and expand access to essential medications for vulnerable communities." *AbbVie, Inc. v. Murrill*, 166 F.4th 528, 534 (5th Cir. 2026). The 340B program requires drug manufacturers—as a condition of coverage of their products under Medicaid and Medicare Part B—to agree to offer certain drugs to covered entities that serve uninsured and low-income individuals at discounted prices. 42 U.S.C. § 256b. Many covered entities lack the resources to operate in-house pharmacies, so they partner with outside pharmacies to dispense the discounted drugs. In recent years, drug manufacturers have imposed restrictive policies that constrain covered entities' use of contract pharmacies. States around the country responded by enacting statutes to combat such policies and preserve access to necessary drugs for the people Congress sought to protect. Drug manufacturers, in turn, have mounted a wave of litigation contending that the 340B program preempts these state measures.

We heard oral argument on the constitutionality of two such state statutes: Maryland's H.B. 1056 and West Virginia's S.B. 325. Md. Code § 12-6C-09.1; W. Va. Code § 60A-8-6a. In the West Virginia case, the majority departed from the unanimous view of the circuit courts[1] and the overwhelming consensus view of the district courts[2] and held

---

[1] *AbbVie, Inc. v. Murrill*, 166 F.4th 528, 538–42 (5th Cir. 2026); *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 648 (5th Cir. 2025); *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1143 (8th Cir. 2024).

[2] Since my dissent in *Pharmaceutical Research & Manufacturers of America v. McCuskey*, No. 25-1054, 2026 WL 898259, at *16 nn.2–3 (4th Cir. Mar. 31, 2026)

8

that West Virginia's S.B. 325 is likely preempted by the 340B program.  *See Pharm. Rsch. & Mfrs. of Am. v. McCuskey*, No. 25-1054, 2026 WL 898259, at *8–12 (4th Cir. Mar. 31, 2026).  There, I dissented because no binding or persuasive authority sets out or requires a

---

(Benjamin, J., dissenting), I have identified additional relevant decisions.  At least 11 district courts have refused to enter preliminary injunctions on comparable state statutes. *Pharm. Rsch. & Mfrs. of Am. v. Weiser*, 2026 WL 763970 (D. Colo. Mar. 18, 2026); *AstraZeneca Pharms. LP v. Lopez*, 2026 WL 497141 (D. Haw. Feb. 23, 2026); *Pharm. Rsch. & Mfrs. of Am. v. Frey*, 2026 WL 184504 (D. Me. Jan. 23, 2026)*; Novartis Pharm. Corp. v. Frey*, 2025 WL 2813787 (D. Me. Sept. 23, 2025); *Astrazeneca Pharms. LP v. Weiser*, 2025 WL 3653161 (D. Colo. Dec. 17, 2025); *AbbVie, Inc. v. Weiser*, 811 F. Supp. 3d 1264 (D. Colo. 2025); *AbbVie Inc. v. Neronha*, 1:25-cv-00388-JJM-AEM (D.R.I. Sept. 30, 2025); *AstraZeneca Pharms. LP v. Fitch*, 766 F. Supp. 3d 657 (S.D. Miss. 2024); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737 (S.D. Miss. 2024); *AbbVie Inc. v. Skrmetti*, 2025 WL 1805271 (M.D. Tenn. June 30, 2025); *AbbVie, Inc. v. Brown*, 1:24-cv-01557-MJM (D. Md. Sept. 10, 2024).

And at least five district courts have dismissed a drug manufacturer's preemption arguments on a motion to dismiss or motion for summary judgment.  *Pharm. Rsch. and Mfrs. of Am. v. Skrmetti*, 2026 WL 803261, at *11–15 (M.D. Tenn. Mar. 23, 2026) (dismissing manufacturers' claim that Tennessee law was preempted); *AbbVie Inc. v. Skrmetti*, 2026 WL 542712, at *10–12 (M.D. Tenn. Feb. 26, 2026) (same); *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 645 F. Supp. 3d 890, 902 (E.D. Ark. 2022) (granting summary judgment for state on manufacturers' claim that Arkansas law was preempted), *aff'd*, 95 F.4th 1136 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 768, (2024); *Astrazenca Pharms. LP v. Bailey*, 2025 WL 644285, at *3 (W.D. Mo. Feb. 27, 2025) (dismissing manufacturers' claim that Missouri law was preempted); *Pharm. Rsch. & Mfrs. of Am. v. Murrill*, 2024 WL 4361597, at *8–9 (W.D. La. Sept. 30, 2024) (granting summary judgment for state on manufacturers' claim that Louisiana law was preempted).

So, that totals to 16 district courts that have rejected or dismissed a drug manufacturer's preemption arguments, compared to the two district courts that have found otherwise.  *See Pharm. Rsch. & Mfrs. of Am. v. Morrisey*, 760 F. Supp. 3d 439 (S.D. W. Va. 2024); *see also AbbVie, Inc. v. Drummond*, 2025 WL 3048929 (W.D. Okla. Oct. 31, 2025).

heightened preemption analysis for laws passed under the Spending Clause.[3]  *See McCuskey*, 2026 WL 898259, at *21–24 (Benjamin, J., dissenting).

Because the majority vacated and remanded the district court's order consistent with its *McCuskey* decision, I dissent here for the same reasons I did in *McCuskey*.  Maryland did not overstep its bounds by enacting H.B. 1056.  I would have affirmed the district court's denial of a preliminary injunction.

---

[3] After we heard oral argument, it seems as if drug manufacturers have astutely taken note of the majority's interest in Congress' spending power and have begun advancing those arguments in their latest challenges to state delivery statutes.  Yet two district courts (which, so far as I am aware, are the only two district courts to consider the argument) have already found the Spending Clause arguments unlikely to succeed.  *See Weiser*, 2026 WL 763970, at *4; *see also Lopez*, 2026 WL 497141, at *14.