No. 24-1939 (L)

**IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**ABBVIE, INC.,** *et al.*,

*Plaintiffs-Appellants*,

**v.**

**ANTHONY BROWN,** *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Maryland
(Matthew J. Maddox, District Judge)

# SUPPLEMENTAL BRIEF OF APPELLEES

ANTHONY G. BROWN
Attorney General of Maryland

JOSHUA R. CHAZEN
RYAN R. DIETRICH
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jchazen@oag.maryland.gov
rdietrich@oag.maryland.gov
(410) 576-7058 / 410-576-7648
(410) 576-6995 (facsimile)

July 31, 2026

Attorneys for Appellees

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................1

SUPPLEMENTAL ARGUMENT ..................................................................2

I. HOUSE BILL 1056 WORKS TO ADVANCE CONGRESS'S CENTRAL GOALS IN ENACTING THE 340B PROGRAM. ..........................................................2

II. THE FEDERAL GOVERNMENT'S AMICUS BRIEF MISAPPLIES THE INTERGOVERNMENTAL IMMUNITY DOCTRINE AND NONDISCRIMINATION PRINCIPLES. ..........................................................................................5

III. THE PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR CLAIMS. ..................10

A. The District Court Did Not Err in Holding That the Plaintiffs Are Unlikely to Succeed on Their Preemption Claims. ..............................12

B. The District Court Did Not Err in Holding That AbbVie Is Unlikely to Succeed on Its Takings Clause Claims. ............................21

C. The District Court Did Not Err in Holding That Novartis and PhRMA Are Unlikely to Succeed on Their Dormant Commerce Clause Claim. ......................................................................22

IV. THIS COURT SHOULD NOT ENTERTAIN ANY ARGUMENT RELATING TO THE SPENDING CLAUSE. ..........................................................................24

V. THE REMAINING PRELIMINARY INJUNCTION FACTORS FAVOR DEFENDANTS. ..........................................................................................26

CONCLUSION ..........................................................................................27

CERTIFICATE OF COMPLIANCE ..........................................................28

# TABLE OF AUTHORITIES

Page

## Cases

*AbbVie Inc. v. Brown*, 809 F. Supp. 3d 1341 (D. Utah 2025) ................................18

*AbbVie Inc. v. Drummond*, 808 F. Supp. 3d 1266 (W.D. Okla. 2025), *appeal docketed*, No. 25-6184 (10th Cir. Nov. 13, 2025) ................................19

*AbbVie Inc. v. Fitch*, No. 1:24-cv-184-HSO-BWR, 2024 WL 3503965 (S.D. Miss. July 22, 2024), *aff'd*, 152 F.4th 635 (5th Cir. 2025) .......................11

*AbbVie Inc. v. Fitch*, No. 1:24-cv-184-HSO-BWR, 2026 WL 1587716 (S.D. Miss. June 3, 2026), *appeal docketed*, No. 26-60527 (5th Cir. July 7, 2026) .........................................................................12

*AbbVie Inc. v. Hilgers*, No. 4:25-cv-3089, 2025 WL 3688051 (D. Neb. Dec. 19, 2025) .......................................................................11

*AbbVie Inc. v. Jackley*, No. 3:25-cv-03006-RAL, 2025 WL 3706066 (D.S.D. Dec. 22, 2025) .......................................................................11

*AbbVie Inc. v. Lopez*, No. 25-00230-SASP-WRP, 2026 WL 895705 (D. Haw. Feb. 19, 2026) ................................................................ 17, 18

*AbbVie Inc. v. Neronha*, No. 1:25-cv-00388 (D.R.I. Sept. 30, 2025), *appeal docketed*, No. 25-1940 (1st Cir. Oct. 6, 2025).......................................11

*AbbVie Inc. v. Skrmetti*, No. 3:25-cv-00519, 2025 WL 1805271 (M.D. Tenn. June 30, 2025).................................................................11

*AbbVie Inc. v. Skrmetti*, No. 3:25-cv-00519, 2026 WL 542712 (M.D. Tenn. Feb. 26, 2026), *appeal docketed*, No. 26-5279 (6th Cir. Apr. 1, 2026) .......................................................................12

*AbbVie Inc. v. Wrigley*, No. 1:25-cv-00081, 2026 WL 1133457 (D.N.D. Apr. 27, 2026), *appeal docketed*, No. 26-1860 (8th Cir. May 5, 2026) .......................................................................17

*AbbVie, Inc. v. Fitch*, 152 F.4th 635 (5th Cir. 2025).................. 8, 13, 14, 16, 21, 22

*AbbVie, Inc. v. Murrill*, No. 24-30645, 2026 WL 1947948 (5th Cir. July 6, 2026) .............................................. 2, 13, 14, 15, 16, 21, 22, 25

*AbbVie, Inc. v. Weiser*, 811 F.Supp.3d 1264 (D. Colo. 2025), *appeal dismissed as moot*, No. 25-1439 (10th Cir. June 22, 2026) ....................11

*AbbVie, Inc. v. Weiser*, No. 25-cv-1847-WJM-KAS, 2026 WL 1678085 (D. Colo. June 10, 2026), *appeal docketed*, No. 26-1244 (10th Cir. June 25, 2026) ..................................................................11

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ..........................................16

*Association for Accessible Medicines v. Frosh*, 887 F.3d 664 (4th Cir. 2018)..................................................................................23

*Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011)..................................3

*AstraZeneca Pharms. LP v. Bailey*, No. 2:24-cv-04143-MDH, 2025 WL 644285 (W.D. Mo. Feb. 27, 2025) ............................................ 12, 21

*AstraZeneca Pharms. LP v. Fitch*, 766 F. Supp. 3d 657 (S.D. Miss. 2024) ........................................................................................11

*AstraZeneca Pharms. LP v. Frey*, No. 1:25-cv-00495-JCN, 2026 WL 2145194 (D. Me. July 27, 2026).......................................................11

*AstraZeneca Pharms. LP v. Harris*, No. 4:24-cv-00268 (E.D. Ark. Sept. 30, 2025) ...................................................................18

*AstraZeneca Pharms. LP v. Lopez*, No. 25-00369-MWJS-WRP, 2026 WL 497141 (D. Haw. Feb. 23, 2026), *appeal docketed*, No. 26-1172 (9th Cir. Feb. 27, 2026) ........................................................ 11, 18

*AstraZeneca Pharms. LP v. McClain*, No. 4:24-cv-00268-KGB, 2025 WL 4092197 (E.D. Ark. Sept. 30, 2025).................................................20

*AstraZeneca Pharms. LP v. Weiser*, No. 25-cv-02685-PAB-STV, 2025 WL 3653161 (D. Colo. Dec. 17, 2025), *appeal docketed*, No. 25-1466 (10th Cir. Dec. 22, 2025)..........................................................11

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001).......................................6

*Cotton Petrol. Corp. v. New Mexico*, 490 U.S. 163 (1989).......................................9

*Dawson v. Steager*, 586 U.S. 171 (2019)....................8

*Hencely v. Fluor Corp.*, 146 S. Ct. 1086 (2026)....................6

*Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931 (2026)....................25

*National Pork Producers Council v. Ross*, 598 U.S. 356 (2023)....................23

*North Dakota v. United States*, 495 U.S. 423 (1990) (plurality)....................9

*Novartis Pharms. Corp. v. Bailey*, No. 2:24-cv-04131-MDH, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025)....................12

*Novartis Pharms. Corp. v. Bailey*, No. 2:24-cv-04131-MDH, 2025 WL 595189 (W.D. Mo. Feb. 24, 2025)....................11

*Novartis Pharms. Corp. v. Brown*, No. 3:26-cv-05302-DGE, 2026 WL 1660347 (W.D. Wash. June 9, 2026), *appeal docketed*, No. 26-3712 (9th Cir. June 9, 2026)....................5, 11, 22

*Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737 (S.D. Miss. 2024), *aff'd*, No. 24-60342, 2026 WL 963504 (5th Cir. Apr. 9, 2026)....................11

*Novartis Pharms. Corp. v. Frey*, No. 1:25-cv-00407-JCN, 2025 WL 2813787 (D. Me. Sept. 23, 2025), *appeal docketed*, No. 25-1914 (1st Cir. Sept. 26, 2025)....................11

*Novartis Pharms. Corp. v. Hanaway*, No. 25-1619, 2026 WL 1892141 (8th Cir. July 1, 2026)....................15, 16, 23, 24

*Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452 (D.C. Cir. 2024)....................7, 8

*Penn Dairies v. Milk Control Comm'n*, 318 U.S. 261 (1943)....................9

*Pharmaceutical Rsch. & Mfrs. of Am. v. Arel*, No. 2:25-cv-00600-mkl (D. Vt. Dec. 29, 2025)....................20

*Pharmaceutical Rsch. & Mfrs. of Am. v. Bailey*, No. 2:24-cv-04144-MDH, 2025 WL 644281 (W.D. Mo. Feb. 27, 2025)....................12

*Pharmaceutical Rsch. & Mfrs. of Am. v. Ellison*, No. 62-cv-24-5744 (Minn. Dist. Ct. Apr. 15, 2025), *aff'd*, No. A25-0805, 2026 WL 445719 (Minn. App. Feb. 17, 2026)....................12

*Pharmaceutical Rsch. & Mfrs. of Am. v. Fitch*, 1:24-cv-160-HSO-BWR, 2024 WL 3277365 (S.D. Miss. July 1, 2024), *aff'd*, No. 24-60340, 2026 WL 963501 (5th Cir. Apr. 9, 2026) ........................................................11

*Pharmaceutical Rsch. & Mfrs. of Am. v. Frey*, No. 1:25-cv-00469-JCN, 2026 WL 184504 (D. Me. Jan. 23, 2026), *appeal docketed*, No. 26-1099 (1st Cir. Jan. 28, 2026)........................................................................11

*Pharmaceutical Rsch. & Mfrs. of Am. v. McClain*, 645 F. Supp. 3d 890 (E.D. Ark. 2022), *aff'd*, 95 F.4th 1136 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 768 (2024)..................................................................12

*Pharmaceutical Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 768 (2024)........................... 2, 8, 15, 16

*Pharmaceutical Rsch. & Mfrs. of Am. v. McCuskey,* 171 F.4th 675 (4th Cir. 2026), *vacated*, 176 F.4th 830 (Mem.) ...........................................6, 25

*Pharmaceutical Rsch. & Mfrs. of Am. v. Morrisey*, Nos. 2:24-cv-00271, 2:24-cv-00272, 2:24-cv-00298, 2024 WL 5147643 (S.D. W. Va. Dec. 17, 2024)........................................................................17

*Pharmaceutical Rsch. & Mfrs. of Am. v. Murrill*, No. 6:23-cv-00997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024), *aff'd*, No. 24-30645, 2026 WL 1947948 (5th Cir. July 6, 2026) ........................................................12

*Pharmaceutical Rsch. & Mfrs. of Am. v. Skrmetti*, No. 3:25-cv-00582, 2026 WL 803261 (M.D. Tenn. Mar. 23, 2026), *appeal docketed*, No. 26-5275 (6th Cir. Mar. 31, 2026) ...................................12

*Pharmaceutical Rsch. & Mfrs. of Am. v. Torrez*, No. 1-25-cv-01225-MIS-JHR, 2026 WL 1752214 (D.N.M. May 26, 2026), *appeal docketed*, No. 26-2097 (10th Cir. June 9, 2026)....................................11

*Pharmaceutical Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644 (2003) ...................25

*Pharmaceutical Rsch. & Mfrs. of Am. v. Weiser*, No. 1:25-cv-02437-RMR-STV, 2026 WL 763970 (D. Colo. Mar. 18, 2026), *appeal docketed*, No. 26-1086 (10th Cir. Mar. 20, 2026) ..................................11

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ..................................................23

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) ..............................................21

*Sanofi Aventis U.S. LLC v. United States Dep't Health & Hum. Servs.*,
58 F.4th 696 (3d Cir. 2023) .................................................................. 6, 8, 15

*United States v. City of Detroit*, 355 U.S. 466 (1958) ............................................9

*United States v. King County*, 122 F.4th 740 (9th Cir. 2024) .................................8

*United States v. Washington*, 596 U.S. 832 (2022) ............................................8, 9

**Constitutional Provisions**

U.S. Const. amend. V.............................................................................................21

**Statutes**

2024 Md. Laws ch. 962, § 1......................................................................................1

42 U.S.C. § 256b(a)(1)..........................................................................................3, 7

42 U.S.C. § 256b(a)(3)...............................................................................................3

42 U.S.C. § 256b(a)(4)...............................................................................................3

Md. Code Ann., Health Occ. § 12-301 (LexisNexis 2024)....................................16

Md. Code Ann., Health Occ. § 12-6C-09.1 (LexisNexis Supp. 2024)......................1

Md. Code Ann., Health Occ. § 12-6C-09.1(b) (LexisNexis Supp. 2024)...............27

**Miscellaneous**

*Notice Regarding 340B Drug Pricing Program—Contract Pharmacy Services*, 75 Fed. Reg. 10272 (Mar. 5, 2010) ...............................................4, 16

*Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services*, 61 Fed. Reg. 43549 (Aug. 23, 1996)................4, 7

Patient Protection and Affordable Care Act, Pub. L. No. 111-148,
124 Stat. 119, 821-822 (2010) .................................................................................4

No. 24-1939 (L)

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**ABBVIE, INC.,** *et al.*,

*Plaintiffs-Appellants*,

**v.**

**ANTHONY BROWN,** *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Maryland
(Matthew J. Maddox, District Judge)

**SUPPLEMENTAL BRIEF OF APPELLEES**

## INTRODUCTION

The district court did not err in denying the plaintiffs' motions for preliminary injunction. In enacting the law at issue here, the General Assembly of Maryland intended to prevent 340B drug manufacturers from taking actions "to limit or restrict the acquisition or delivery of a 340B drug." (J.A. 339.) Consistent with legislative intent, H.B. 1056[1] provides the mechanism to enforce the *delivery* of 340B drugs to

[1] 2024 Md. Laws ch. 962, § 1, codified at Md. Code Ann., Health Occ. § 12-6C-09.1 (LexisNexis Supp. 2025).

contract pharmacies. By contrast, the federal scheme allows the United States Department of Health and Human Services to enforce covered entities' ability to *purchase* 340B drugs. Because H.B. 1056 speaks to nothing covered by the federal scheme, H.B. 1056 cannot disrupt the bargains reached between plaintiffs and the federal government as part of the 340B program. That is, H.B. 1056 does not impact the federal 340B program; rather, "it preserves access to medicines for the very populations Congress set out to protect." *AbbVie, Inc. v. Murrill*, No. 24-30645, 2026 WL 1947948, at *1 (5th Cir. July 6, 2026).

## SUPPLEMENTAL ARGUMENT

### I. HOUSE BILL 1056 WORKS TO ADVANCE CONGRESS'S CENTRAL GOALS IN ENACTING THE 340B PROGRAM.

Congress enacted the 340B program with the overriding, significant objective of providing cash-strapped, underfunded covered entities with additional funds, realized from the savings on purchases of 340B drugs, to enable them to "reach[] more eligible patients and provid[e] more comprehensive services." H.R. Rep. No. 102-384 (Part 2), at 12 (1992); *see also Pharmaceutical Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1141 (8th Cir. 2024). Consistent with that objective, covered entities realize greater savings, and thereby derive higher revenues to allocate to patient care and services, the greater the volume of their 340B drug purchases.

H.B. 1056 does not deprive plaintiffs of anything to which the 340B program entitles them. As the United States acknowledges, "pharmaceutical manufacturers participating in Medicaid and in Medicare Part B (which covers physician-administered drugs) 'must offer discounted drugs to covered entities, dominantly, local facilities that provide medical care for the poor.'" U.S. Amicus Br. 3 (quoting *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 115 (2011), and citing 42 U.S.C. § 256b(a)(1), (3), (4)). Section 340B implements such requirements through uniform agreements known as Pharmaceutical Pricing Agreements, which are entered into by manufacturers with the United States Department of Health and Human Services. *Astra*, 563 U.S. at 113. These "'are not transactional, bargained-for contracts' but rather 'simply incorporate statutory obligations and record the manufacturers' agreement to abide by them.'" U.S. Amicus Br. 4 (citing *Astra*, 563 U.S. at 113, 118). H.B. 1056 requires that manufacturers participating in the 340B program deliver 340B drugs to all of a Maryland covered entity's contract pharmacies. Such a condition has nothing to do with the Pharmaceutical Pricing Agreements nor any language within the relevant federal statute.

Through Pharmaceutical Pricing Agreements, plaintiffs do not agree to perform functions of the federal government. And plaintiffs do not provide goods or services to the federal government, a point the federal government concedes. U.S. Amicus Br. 12 ("[T]he agreements also require manufacturers to actually offer the

drugs for sale to covered entities.”). Agreeing to sell 340B drugs to non-governmental, covered entities at a discount, under pre-set and nonnegotiable terms and conditions, does not change that plaintiffs are voluntary participants in a federal program; there has been no “careful bargain” struck by Congress and manufacturers.

But even if there were a bargain of some kind between the plaintiffs and the federal government, plaintiffs’ argument that H.B. 1056 “fundamentally alters the bargain Congress struck in 340B,” Reply Br. 20, lacks merit. The plaintiffs have long understood that Congress permitted the use of contract pharmacies in the 340B program. Contract pharmacy arrangements went into effect in 1996. *Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services*, 61 Fed. Reg. 43549, 43550 (Aug. 23, 1996). The Health Resources and Services Administration (“HRSA”) has observed the important role that contract pharmacies play in facilitating covered entities’ participation in the 340B program, noting that “[i]t would defeat the purpose of the 340B program if . . . covered entities could not use their affiliated [contract] pharmacies in order to participate in the 340B program.” *Id.* And in 2010, HRSA issued guidelines permitting unlimited contract pharmacy arrangements. *Notice Regarding 340B Drug Pricing Program—Contract Pharmacy Services*, 75 Fed. Reg. 10272, 10273 (Mar. 5, 2010); *see also* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, 821-822 (2010) (expanding the definition of a covered entity within the 340B program).

Thus, if there were a bargain between manufacturers and Congress in the 340B program, that bargain would include contract pharmacies as a component. *Novartis Pharms. Corp. v. Brown*, No. 3:26-cv-05302-DGE, 2026 WL 1660347, at *13 (W.D. Wash. June 9, 2026), *appeal docketed*, No. 26-3712 (9th Cir. June 9, 2026).

H.B. 1056 furthers Congress's intent in enacting the 340B program: to provide covered entities with funds to further their missions of providing health care to underserved communities. H.B. 1056 does so by ensuring that Maryland covered entities participate in the 340B program without restrictions on delivery, thereby providing access to patients in need of 340B drugs. By precluding manufacturers from imposing delivery restrictions upon covered entities, and thereby minimizing their participation in the 340B program, H.B. 1056 fosters the 340B program's objectives of financially supporting covered entities and increasing the accessibility of 340B drugs. Thus, the district court was correct to observe that H.B. 1056 "assists in fulfilling the purpose of" the 340B program. (J.A. 886.).

## II. THE FEDERAL GOVERNMENT'S AMICUS BRIEF MISAPPLIES THE INTERGOVERNMENTAL IMMUNITY DOCTRINE AND NONDISCRIMINATION PRINCIPLES.

There is no reference to intergovernmental immunity in the record below, plaintiffs' opening brief, or plaintiffs' reply brief. The United States now files an

amicus brief arguing that H.B. 1056 violates the intergovernmental immunity doctrine. U.S. Amicus Br. 11-16. This argument fails for many reasons.[2]

First, the Supreme Court "has emphasized the narrowness of [the intergovernmental immunity] doctrine, which will rarely apply" to private parties. *Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1094 (2026). The Court recently confirmed that this doctrine protects federal contractors from discrimination and liability only when "the government has directed a contractor to do the very thing that is the subject of the claim." *Id.* at 1095 (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n.6 (2001)). Consistent with this understanding, just a few years ago, the Department of Health and Human Services tried to step in and stop the manufacturers that the United States now supports. U.S. Amicus Br. 13. In rejecting the Department of Health and Human Services' attempt to end pharmaceutical manufacturers' discriminatory practices, both the Third and D.C. Circuits determined that a gap in the federal statute stymied the Department of Health and Human Service's efforts because the federal statute did not address delivery at all. *Sanofi Aventis U.S. LLC v. United States Dep't Health & Hum. Servs.*, 58 F.4th 696, 704 (3d Cir. 2023) ("Section 340B's 'purchased by' language likewise says nothing

[2] Although the *McCuskey* majority referenced the intergovernmental immunity doctrine, it rejected its direct application while advancing a contract law analogy. *See Pharmaceutical Rsch. & Mfrs. of Am. v. McCuskey,* 171 F.4th 675, 689 (4th Cir. 2026), *vacated*, 176 F.4th 830 (Mem.).

about delivery." (quoting 42 U.S.C. § 256b(a)(1))); *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024) ("Section 340B is thus silent about delivery conditions, which HRSA itself once acknowledged." (citing 61 Fed. Reg. at 43549-50)).

When the United States tried to end the pharmaceutical companies' discrimination, federal courts held that federal law was silent as to delivery restrictions. Maryland stepped in, not to discriminate against participants in the 340B program, but to end discriminatory practices imposed on covered entities. (J.A. 339-343.) The United States advances a theory that Maryland is discriminating against pharmaceutical manufacturers because of alleged "governmental status." U.S. Amicus Br. 14 (quoting *Washington*, 596 U.S. at 839). The reality is far worse: pharmaceutical manufacturers discriminate against covered entities by imposing delivery restrictions on entities who provide medical and social resources to Maryland residents who need the most support. (*See* J.A. 310-337.)

Second, the federal government's argument ignores the text of the 340B statute and the history of the 340B program. The United States theorizes that Maryland "impermissibly targets and discriminates against manufacturers that participate in a federal program." U.S. Amicus Br. 13. But again, nothing in the federal statute "authorize[s]" drug manufacturers to limit delivery to contract

pharmacies. *McClain*, 95 F.4th at 1142. This leaves room for Maryland to govern that practice.

Third, the argument advanced by the United States overlooks the pharmaceutical manufacturers who decided to discriminate against covered entities, "with whom" the United States also "deals" under the 340B program. *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted). The government's reliance on cases like *United States v. King County*, 122 F.4th 740 (9th Cir. 2024), and *Dawson v. Steager*, 586 U.S. 171 (2019) is, therefore, misplaced. U.S. Amicus Br. 14-16. In *King County*, federal contractors were facially singled out and treated unfavorably for doing the government's work. *King County*, 122 F.4th at 757. And in *Dawson*, federal employees themselves were targeted for higher rates of state taxation. *Dawson*, 586 U.S. at 173-74. Here, the United States fails to mention that plaintiffs do not impose conditions on their delivery of drugs *as federal agents*. This is likely because the United States knows that plaintiffs have restricted drug delivery out of displeasure with the way it runs the 340B program. *See AbbVie, Inc. v. Fitch*, 152 F.4th 635, 640-41 (5th Cir. 2025); *Novartis*, 102 F.4th at 458; *McClain*, 95 F.4th at 1140; *Sanofi*, 58 F.4th at 700-01.

The United States also tries to suggest that intergovernmental immunity is not limited to traditional contractors and that it also applies to other groups that deal with the federal government, such as lessees of federal property and recipients of federal

affordable housing grants. U.S. Amicus Br. 19 (citing *Washington*, 596 U.S. at 832.) But these arguments do not assist the plaintiffs. Not only does the United States fail to show how the plaintiffs fall into any of these buckets, but the United States also fails to show how H.B. 1056 results in Maryland "interfering with or controlling the operations of the Federal Government." *Washington*, 596 U.S. at 838; *see also North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality) (summarizing how the intergovernmental immunity's applicability to third parties has coalesced around the principle that State laws which are non-discriminatory are no longer unconstitutional even if they may remotely affect federal functions).

The pharmaceutical manufacturers are not contractors, lessees, or recipients of housing grants. Even if the Pharmaceutical Pricing Agreements made the plaintiffs into contractors of the federal government, the Supremacy Clause leaves room for States to enforce generally applicable laws against contractors. *See Cotton Petrol. Corp. v. New Mexico*, 490 U.S. 163, 175 (1989); *United States v. City of Detroit*, 355 U.S. 466, 469 (1958); *Penn Dairies v. Milk Control Comm'n*, 318 U.S. 261, 270 (1943). There is no component of H.B. 1056 that places a prohibition on the federal government, controls the federal government's operations, or singles out the federal government for less favorable treatment.

H.B. 1056 prevents plaintiffs from implementing delivery policies that are not expressly permitted under federal law. Had Congress wanted to implement the 340B

program through contract pharmacy restrictions, it could have done so. The intergovernmental immunity argument advanced by the United States is one not made by the plaintiffs in the district court, further highlighting how the district court did not abuse its discretion when it denied the motions for preliminary injunction. But even if it were advanced by the plaintiffs, that argument is contradicted by the federal government and plaintiffs' prior positions, decisions from courts across the country, and the presumption against preemption.

## III. THE PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THEIR CLAIMS.

Every other circuit court and nearly every district court to entertain challenges to H.B. 1056 and similar laws has denied relief requested by the pharmaceutical manufacturers and trade association bringing the causes of action. Whether on a

motion for preliminary injunction,[3] motion to dismiss,[4] or motion for summary judgment,[5] nearly all judges to assess the issues presented by the plaintiffs have ruled

---

[3] *Novartis v. Brown*, No. 3:26-cv-05302-DGE, 2026 WL 1660347 (W.D. Wash. June 9, 2026); *Pharmaceutical Rsch. & Mfrs. of Am. v. Torrez*, No. 1-25-cv-01225-MIS-JHR, 2026 WL 1752214 (D.N.M. May 26, 2026), *appeal docketed*, No. 26-2097 (10th Cir. June 9, 2026); *Pharmaceutical Rsch. & Mfrs. of Am. v. Weiser*, No. 1:25-cv-02437-RMR-STV, 2026 WL 763970 (D. Colo. Mar. 18, 2026), *appeal docketed*, No. 26-1086 (10th Cir. Mar. 20, 2026); *AstraZeneca Pharms. LP v. Lopez*, No. 25-00369-MWJS-WRP, 2026 WL 497141 (D. Haw. Feb. 23, 2026), *appeal docketed*, No. 26-1172 (9th Cir. Feb. 27, 2026); *Pharmaceutical Rsch. & Mfrs. of Am. v. Frey*, No. 1:25-cv-00469-JCN, 2026 WL 184504 (D. Me. Jan. 23, 2026), *appeal docketed*, No. 26-1099 (1st Cir. Jan. 28, 2026); *AbbVie Inc. v. Jackley*, No. 3:25-cv-03006-RAL, 2025 WL 3706066 (D.S.D. Dec. 22, 2025) (seeking preliminary injunction only on claims data provision); *AbbVie Inc. v. Hilgers*, No. 4:25-cv-3089, 2025 WL 3688051 (D. Neb. Dec. 19, 2025) (seeking preliminary injunction only on claims data provision); *AstraZeneca Pharms. LP v. Weiser*, No. 25-cv-02685-PAB-STV, 2025 WL 3653161 (D. Colo. Dec. 17, 2025), *appeal docketed*, No. 25-1466 (10th Cir. Dec. 22, 2025); *AbbVie, Inc. v. Weiser*, 811 F.Supp.3d 1264 (D. Colo. 2025), *appeal dismissed as moot*, No. 25-1439 (10th Cir. June 22, 2026); *AbbVie Inc. v. Neronha*, No. 1:25-cv-00388 (D.R.I. Sept. 30, 2025), *appeal docketed*, No. 25-1940 (1st Cir. Oct. 6, 2025); *Novartis Pharms. Corp. v. Frey*, No. 1:25-cv-00407-JCN, 2025 WL 2813787 (D. Me. Sept. 23, 2025), *appeal docketed*, No. 25-1914 (1st Cir. Sept. 26, 2025); *AbbVie Inc. v. Skrmetti*, No. 3:25-cv-00519, 2025 WL 1805271 (M.D. Tenn. June 30, 2025); *Novartis Pharms. Corp. v. Bailey*, No. 2:24-cv-04131-MDH, 2025 WL 595189 (W.D. Mo. Feb. 24, 2025); *AstraZeneca Pharms. LP v. Fitch*, 766 F. Supp. 3d 657 (S.D. Miss. 2024); *AbbVie Inc. v. Fitch*, No. 1:24-cv-184-HSO-BWR, 2024 WL 3503965 (S.D. Miss. July 22, 2024), *aff'd*, 152 F.4th 635 (5th Cir. 2025); *Pharmaceutical Rsch. & Mfrs. of Am. v. Fitch*, 1:24-cv-160-HSO-BWR, 2024 WL 3277365 (S.D. Miss. July 1, 2024), *aff'd*, No. 24-60340, 2026 WL 963501 (5th Cir. Apr. 9, 2026); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737 (S.D. Miss. 2024), *aff'd*, No. 24-60342, 2026 WL 963504 (5th Cir. Apr. 9, 2026).

[4] *AstraZeneca Pharms. LP v. Frey*, No. 1:25-cv-00495-JCN, 2026 WL 2145194 (D. Me. July 27, 2026); *AbbVie, Inc. v. Weiser*, No. 25-cv-1847-WJM-KAS, 2026 WL 1678085 (D. Colo. June 10, 2026), *appeal docketed*, No. 26-1244 (10th Cir. June 25, 2026); *Pharmaceutical Rsch. & Mfrs. of Am. v. Skrmetti*, No.

against plaintiffs. Based on the contents of plaintiffs' complaints and motions for preliminary injunction, the district court did not err in determining that plaintiffs are unlikely to succeed on the merits of their claims.

### A. The District Court Did Not Err in Holding That the Plaintiffs Are Unlikely to Succeed on Their Preemption Claims.

H.B. 1056 does not regulate the 340B Program. H.B. 1056 regulates distribution of 340B drugs and the role of contract pharmacies in that distribution, areas left free under the 340B program to be supplemented by the States. Nothing in the text of the 340B statute creates a field reserved to the federal government.

---

3:25-cv-00582, 2026 WL 803261 (M.D. Tenn. Mar. 23, 2026), *appeal docketed*, No. 26-5275 (6th Cir. Mar. 31, 2026); *AbbVie Inc. v. Skrmetti*, No. 3:25-cv-00519, 2026 WL 542712 (M.D. Tenn. Feb. 26, 2026), *appeal docketed*, No. 26-5279 (6th Cir. Apr. 1, 2026); *Pharmaceutical Rsch. & Mfrs. of Am. v. Ellison*, No. 62-cv-24-5744 (Minn. Dist. Ct. Apr. 15, 2025), *aff'd*, No. A25-0805, 2026 WL 445719 (Minn. App. Feb. 17, 2026); *Pharmaceutical Rsch. & Mfrs. of Am. v. Bailey*, No. 2:24-cv-04144-MDH, 2025 WL 644281 (W.D. Mo. Feb. 27, 2025) (granting motion to dismiss as to preemption, Contracts Clause, and Due Process Clause, and denying motion to dismiss as to dormant Commerce Clause); *AstraZeneca Pharms. LP v. Bailey*, No. 2:24-cv-04143-MDH, 2025 WL 644285 (W.D. Mo. Feb. 27, 2025) (granting motion to dismiss as to preemption and Takings Clause and denying motion to dismiss as to Contracts Clause); *Novartis Pharms. Corp. v. Bailey*, No. 2:24-cv-04131-MDH, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025) (granting motion to dismiss as to preemption and denying motion to dismiss as to dormant Commerce Clause).

[5] *AbbVie Inc. v. Fitch*, No. 1:24-cv-184-HSO-BWR, 2026 WL 1587716 (S.D. Miss. June 3, 2026), *appeal docketed*, No. 26-60527 (5th Cir. July 7, 2026); *Pharmaceutical Rsch. & Mfrs. of Am. v. McClain*, 645 F. Supp. 3d 890, 902 (E.D. Ark. 2022), *aff'd*, 95 F.4th 1136 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 768 (2024); *Pharmaceutical Rsch. & Mfrs. of Am. v. Murrill*, No. 6:23-cv-00997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024), *aff'd*, No. 24-30645, 2026 WL 1947948 (5th Cir. July 6, 2026).

Congress left delivery and contract pharmacies unregulated, and Maryland did not preempt federal law in passing H.B. 1056.

Every other circuit court of appeals and nearly all district courts that have analyzed other States' 340B drug delivery statutes have found that Section 340B does not preempt the field of 340B regulation nor the field of 340B enforcement. *See Murrill*, 2026 WL 1947948, at *1 ("States regulate pharmacies—and the distribution of drugs to those pharmacies—every day.").

The Fifth Circuit has decided two cases in the last year rejecting plaintiffs' preemption arguments. In *Fitch*, the Fifth Circuit affirmed the denial of AbbVie's motion for preliminary injunction.[6] 152 F.4th at 639. Although the Fifth Circuit concluded that there was insufficient evidence in the record to support AbbVie's allegation that the 340B statute preempted Mississippi's law, it still found that "Congress has expressed no clear and manifest intent to preempt state laws regulating the distribution of drugs to patients and the role of pharmacies in such distribution." *Id.* at 647. When highlighting that AbbVie's conflict preemption argument was "simply incorrect," *id.*, the Fifth Circuit determined that Mississippi's law "does not compel manufacturers to 'offer' discounted drugs to contract

[6] The defendants referenced this case in a Rule 28(j) letter. (ECF No. 73.)

pharmacies in the way that Section 340B compels them to 'offer' these drugs to covered entities," *id.*

More recently, the Fifth Circuit rejected the same preemption arguments levied by plaintiffs as to Louisiana's version of H.B. 1056 in *Murrill*. The Fifth Circuit's recent opinion substituted a previously issued opinion involving the same parties. 2026 WL 1947948, at *1.[7] In affirming the district court's grant of summary judgment for Louisiana on the issue of Louisiana's law "which bars manufacturers from interfering with covered entities' ability to obtain and deliver discounted drugs through contract pharmacies," *id.* at *1, the Fifth Circuit agreed with the Western District of Louisiana's decision to reject AbbVie and PhRMA's arguments on preemption, *id.* at *5. The Fifth Circuit began by noting that public health and consumer protection are areas of law traditionally reserved to the States. *Id.* The Fifth Circuit also quickly dispensed with the plaintiffs' argument that *Fitch* was based on the "specific claims and sparse record" of a preliminary injunction proceeding. *Id.* at *6 & n.42; *see also* ECF No. 74 (PhRMA attempting to claim the "specific claims and sparse record" in *Fitch* as a differentiator from this case in response to defendants' Rule 28(j) letter). The Fifth Circuit correctly deciphered both that the 340B statute regulates "price ceilings for covered outpatient drugs;

[7] The defendants addressed the earlier decision, which is now withdrawn in place of the current decision, in a Rule 28(j) letter. (ECF No. 79.)

eligibility criteria for covered entities; prohibitions on duplicate discounts and diversion; audit and enforcement mechanisms; and the terms governing manufacturers' and wholesalers' sales of discounted drugs to covered entities," *Murrill*, 2026 WL 1947948, at *6, and that the 340B statute does not regulate "the distribution of drugs to patients nor the role of pharmacies in this distribution," *id.* (citation omitted). Here, the plaintiffs' preemption argument fails because it does not acknowledge that the limits of a federal agency's delegated power and the limits of a State's police power run on two separate tracks. *Id.* at *7.

The Eighth Circuit has also decided two cases that highlight why the district court did not err in denying the motions for preliminary injunction. The first, *McClain*, was discussed by defendants in prior briefing. Appellees' Br. 30-33. In *McClain*, the Eighth Circuit addressed the constitutionality of Arkansas Act 1103, which is Arkansas's version of H.B. 1056. *McClain*, 95 F.4th at 1139. The Eighth Circuit held that "[p]harmacies do not purchase 340B drugs, and they do not receive the 340B price discounts. Covered entities purchase and maintain title to the 340B-discounted drugs, while contract pharmacies dispense these drugs to covered entities' patients." *Id.* at 1144 (citing *Sanofi*, 58 F.4th at 700).

More recently, the Eighth Circuit affirmed the holdings from *McClain*. *See Novartis Pharms. Corp. v. Hanaway*, No. 25-1619, 2026 WL 1892141 (8th Cir. July 1, 2026). In *Hanaway*, the Eighth Circuit affirmed the district court's denial of

Novartis's motion for preliminary injunction as to Missouri Senate Bill 751, which Novartis made, in part, on preemption grounds. *Id.* at *1. The Eighth Circuit foreclosed Novartis's arguments on field preemption due to its prior decision in *McClain*. *Id.* at *11. As to Novartis's conflict preemption argument, the Eighth Circuit determined that laws like H.B. 1056 "do not alter that pricing formula or otherwise set the price of 340B drugs; rather, these laws provide that, once 340B drugs are offered to covered entities at the ceiling price, drug manufacturers cannot prevent covered entities from directing the delivery of those drugs to its contract pharmacies." *Id.* at *12. The Eighth Circuit made clear that these laws "regulate an area beyond the purview of federal law and do not pose an obstacle for drug manufacturers to comply with both federal and state law." *Id.*

Rather than being displaced, state law is enmeshed into the fabric of the program. *See Fitch*, 152 F.4th at 646; *McClain*, 95 F.4th at 1140-43; *Murrill*, 2026 WL 1947948, at *7. States make the laws that allow pharmacies and hospitals to exist. *See* Md. Code Ann., Health Occ. § 12-301 (LexisNexis 2024). And Congress relies on "background principles of state contract law" when it legislates on matters affecting contractual relationships. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009); 75 Fed. Reg. at 10273 (noting that program participants must adhere to applicable to state laws). For plaintiffs to now say that the 340B statute creates an exclusively federal field, after suing in *Novartis* and *Sanofi* to establish that the 340B

statute does not govern manufacturers' policies, is a complete about face on their part as to preemption.

Although nearly every district court entertaining the preemption issue related to States' 340B delivery laws has denied plaintiffs their requested relief, defendants acknowledge that there are a few decisions where district courts agreed with plaintiffs on preemption. But those decisions were based on arguments not advanced in the record in this case and were often in different postures than this case. As described below, none of these cases is persuasive.[8]

In *AbbVie Inc. v. Wrigley*, No. 1:25-cv-00081, 2026 WL 1133457 (D.N.D. Apr. 27, 2026), *appeal docketed*, No. 26-1860 (8th Cir. May 5, 2026), the district court considered motions for summary judgment by the parties, as opposed to motions for preliminary injunction like in this case. *Id.* at *6. In finding that *McClain* is not controlling, the district court relied on a Spending Clause argument that was not made by plaintiffs here. *Id.* at *10 & n.9. For these reasons, *Wrigley* is not a case on which plaintiffs can rely.

In *AbbVie Inc. v. Lopez*, No. 25-00230-SASP-WRP, 2026 WL 895705 (D. Haw. Feb. 19, 2026), the district court granted in part and denied in part Hawaii's

---

[8] Defendants addressed one of these decisions, *Pharmaceutical Research & Manufacturers of America v. Morrisey*, Nos. 2:24-cv-00271, 2:24-cv-00272, 2:24-cv-00298, 2024 WL 5147643 (S.D. W. Va. Dec. 17, 2024), in their prior brief. Appellees' Br. 40-42, 57.

motion to dismiss. *Id.* at *1. And it is true that the district court denied Hawaii's motion to dismiss as to the counts in the complaint pertaining to preemption. *Id.* at *6-*8. But any reliance on this decision would be misplaced because only four days later another judge in that same court denied another manufacturer's motion for preliminary injunction. *AstraZeneca Pharms. LP v. Lopez*, No. 25-00369-MWJS-WRP, 2026 WL 497141 (D. Haw. Feb. 23, 2026), *appeal docketed*, No. 26-1172 (9th Cir. Feb. 27, 2026). And again, the posture of plaintiffs' case is an appeal from an order denying their motion for preliminary injunction, not a ruling on a motion to dismiss, which makes any reliance on the earlier *Lopez* decision detrimental to the plaintiffs' position here. There is a large gap between stating a plausible cause of action and demonstrating a likelihood of success on the merits.

In *AbbVie Inc. v. Brown*, 809 F. Supp. 3d 1341 (D. Utah 2025), the district court granted in part and denied in part Utah's motions to dismiss, allowing claims under the Supremacy Clause and Takings Clause to proceed, while also dismissing causes of action alleging violation of the Commerce Clause and the Due Process Clause. *Id.* at 1366. Again, the issue in the instant appeal is whether the district court erred in denying plaintiffs' motions for preliminary injunction. Thus, reliance on an opinion related to a motion to dismiss would be improper.[9]

---

[9] Similarly, in *AstraZeneca Pharms. LP v. Harris*, No. 4:24-cv-00268 (E.D. Ark. Sept. 30, 2025), the district court denied a motion for judgment on the pleadings

In *AbbVie Inc. v. Drummond*, 808 F. Supp. 3d 1266 (W.D. Okla. 2025), *appeal docketed*, No. 25-6184 (10th Cir. Nov. 13, 2025), the district court granted plaintiffs' motions for preliminary injunction based, in part, on conflict preemption. *Id.* at 1274-79. But part of that district court's analysis was tied to statutory claims data provisions that are not present in H.B. 1056. *See id.* at 1278 (the court relied on "compelling testimony" in an evidentiary hearing to find "that claims data is necessary to establish the reasonable cause required to trigger an audit"). Further, while the court in *Drummond* decided to accept as true "that Oklahoma's delivery regulation in the context of the replenishment model operates a price regulation," *id.* at 1277, that does not mean that the district court below abused its discretion in finding that H.B. 1056 regulates drug delivery, rather than price. Whether 340B drugs purchased by a covered entity are used to replenish or establish inventory at a contract pharmacy, federal law dictates the price of the 340B drugs. In both cases, H.B. 1056 requires only that manufacturers comply with instructions to deliver to covered entities' pharmacies of choice. (*See* ECF No. 78.) Any questions about

filed by intervenor on plaintiff's claims for patent law preemption, Contracts Clause, and Takings Clause. That case is inapplicable, however, because it involves a post-enforcement challenge whereas the instant case involves pre-enforcement challenges.

alleged diversion or compliance with federal pricing requirements are solely matters for federal enforcement unrelated to the Maryland law at issue here.[10]

Finally, in *AstraZeneca Pharms. LP v. McClain*, No. 4:24-cv-00268-KGB, 2025 WL 4092197 (E.D. Ark. Sept. 30, 2025), the court denied intervenor's motion for judgment on the pleadings. *Id.* at *1. Additionally, the parties in that case acknowledged that this was "a post-enforcement, as-applied challenge to Act 1103 by AstraZeneca against whom Act 1103 now has been enforced." *Id.* at *5. The procedural posture is completely different from the case at issue here and it would be inappropriate for plaintiffs to rely on this case.

A strong presumption against preemption applies to public health legislation such as H.B. 1056. Since Congress has not indicated a clear intent to preclude state legislation regarding the field of delivery of 340B drugs, and H.B. 1056 is not an obstacle to fulfillment of the objectives of the 340B program, the district court did not abuse its discretion in denying plaintiffs' motions for preliminary injunction on the issue of preemption.

---

[10] Defendants could find only one other case in which the district court granted a plaintiff's motion for preliminary injunction, but in that case, defendant consented to the issuance of a time-limited preliminary injunction. *See Pharmaceutical Rsch. & Mfrs. of Am. v. Arel*, No. 2:25-cv-00600-mkl (D. Vt. Dec. 29, 2025).

### B. The District Court Did Not Err in Holding That AbbVie Is Unlikely to Succeed on Its Takings Clause Claims.

The Fifth Amendment prohibits "private property" from being "taken for public use, without just compensation." U.S. Const. amend. V. AbbVie argues that H.B. 1056 effects a "per se" taking. Appellants' Br. 60-79; Reply Br. 29-36. AbbVie also argues that even if H.B. 1056 is analyzed as a regulatory taking, the law still violates the Fifth Amendment. Appellants' Br. 80-84; Reply Br. 36-38. Under both theories, AbbVie's claims fail.

The district court found that H.B. 1056 does not impose on drug manufacturers an obligation to transfer or sell its drugs in Maryland. (J.A. 876.) Under H.B. 1056, "AbbVie still receives payment of the full discounted amounts to which it is entitled under Section 340B." *Fitch*, 152 F.4th at 643; *Murrill*, 2026 WL 1947948, at *9. Further, AbbVie voluntarily chose to participate in the 340B program. A government does not take property when there is financial incentive to comply voluntarily. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1007 (1984) ("[A]s long as Monsanto is aware of the conditions under which the data are submitted, and the conditions are rationally related to a legitimate Government interest, a voluntary submission of data by an applicant in exchange for the economic advantages of a registration can hardly be called a taking."); *Bailey*, 2025 WL 644284, at *4 ("When an entity voluntarily participates in a federal program, it

forecloses the possibility that the statute could result in an imposed taking of private property which would give rise to the constitutional right of just compensation.").

AbbVie has cited case law generally finding that a voluntary exchange for a benefit does not exist if the benefit is illusory. Reply Br. 35-36. But aside from these cases, AbbVie cannot cite a single case to support the contention that a new regulatory condition "must be accompanied by a separate benefit to maintain the voluntary nature of the program for purposes of a takings claim." *Brown*, 2026 WL 1660347, at *22 (quoting *Frey*, 2025 WL 2813787, at *14). AbbVie can simply choose not to participate in the 340B program. Appellees' Br. 60-65.

The district court applied the regulatory takings doctrine and concluded that H.B. 1056 does not effectuate a regulatory taking. (J.A. 876-878.) There is no support for AbbVie's position that H.B. 1056 effectuates a regulatory taking. *See* Appellees' Br. 66-68; *Fitch*, 152 F.4th at 644; *Murrill*, 2026 WL 1947948, at *10.

### C. The District Court Did Not Err in Holding That Novartis and PhRMA Are Unlikely to Succeed on Their Dormant Commerce Clause Claim.

The conduct that H.B. 1056 regulates is the delivery and distribution of 340B drugs. That conduct is intrastate and falls within the scope of Maryland's police powers. H.B. 1056 "does not purport to regulate transactions between drug manufacturers and their wholesalers; rather, it regulates only the delivery of 340B

drugs to contract pharmacies that have partnered with a [Maryland] covered entity." *Hanaway*, 2026 WL 1892141, at *6.

H.B. 1056 is not an extraterritorial law. Appellees' Br. 70-73. But even if there are incidental effects on extraterritorial transactions, that is to be expected as the Supreme Court has noted that most state laws control some extraterritorial behavior without violating the Commerce Clause. *National Pork Producers Council v. Ross*, 598 U.S. 356, 374 (2023). Because H.B. 1056 applies only to the delivery of 340B drugs to covered entities and contract pharmacies in Maryland, and the law does not target out-of-state transactions between drug manufacturers and wholesalers, extraterritoriality concerns, such as those this Court found in *Association for Accessible Medicines v. Frosh*, 887 F.3d 664 (4th Cir. 2018), do not apply. *Hanaway*, 2026 WL 1892141, at *6-*7.

H.B. 1056 regulates the distribution of 340B drugs, not the price of 340B drugs. Novartis and PhRMA fail to show how a policy of preventing manufacturers from prohibiting covered entities from directing the delivery of those drugs to their contract pharmacies discriminates against out-of-state economic interests. *Id.* at *8. Thus, there is no discrimination in interstate commerce.

Finally, H.B. 1056 does not excessively burden interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). H.B. 1056 withstands *Pike* scrutiny. Maryland is one of many States to adopt legislation identical or similar to H.B. 1056.

*Hanaway*, 2026 WL 1892141, at *9. While multiple state regulations on contract pharmacies will affect the volume of 340B drugs that Novartis and PhRMA's members deliver in interstate commerce, this patchwork of state laws and monetary costs to comply with such laws are sufficient burdens for plaintiffs to prevail on *Pike* balancing. *Id.*

Novartis and PhRMA have not shown, at this stage in litigation, that the burdens of H.B. 1056 are excessive in relation to the law's benefits. Because plaintiffs have not shown that H.B. 1056 violates the dormant Commerce Clause, the district court did not abuse its discretion in denying the motions for preliminary injunction.

## IV. This Court Should Not Entertain Any Argument Relating to the Spending Clause.

The Spending Clause is not referenced in plaintiffs' opening brief. (ECF No. 34.). The Spending Clause is not referenced in plaintiffs' reply brief. (ECF No. 49.) The Spending Clause is not referenced in the complaint or motions for preliminary injunction filed in the district court. (J.A. 30-60; J.A. 67-110; J.A. 111-113; J.A. 168-171; J.A. 219-309; J.A. 367-411; J.A. 769-920.) Because plaintiffs did not advance a Spending Clause argument in the district court, the district court could not have abused its discretion in denying the motions for preliminary injunction on Spending Clause grounds. Appellees' Br. 22.

There is a litany of references to the Spending Clause, however, in plaintiffs' response to the petition for rehearing en banc. (ECF No. 100.) Undoubtedly, this stems from the now vacated panel decision in *McCuskey*. Even if this Court were to entertain a Spending Clause argument, it would not change the outcome because whether Congress enacted Section 340B pursuant to its spending power does not change the analysis that shows that the 340B statute does not preempt H.B. 1056.

The 340B statute does not provide any language regarding delivery logistics or contract pharmacies. As stated earlier, H.B. 1056 is consistent with the objectives of the 340B program. And more than that, H.B. 1056 does not disrupt any bargain between manufacturers and the federal government. "To hold otherwise would graft a stricter preemption standard onto spending-power legislation—more than precedent requires." *Murrill*, 2026 WL 1947948, at *8 n.68. The Fifth Circuit properly observed that "the presumption against preemption applies to spending-power legislation with at least the same force it carries elsewhere." *Id.*; *see also Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931, 1948 (2026) ("Under the Spending Clause, Congress's power to spend money does not include the power to regulate."); *Pharmaceutical Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 670 (2003).

## V. The Remaining Preliminary Injunction Factors Favor Defendants.

Though the first factor is dispositive, even if plaintiffs could show that they are likely to succeed on their claims, the remaining factors all favor the defendants. The district court found that the merged factor of balancing the equities and weighing the public interest favored the defendants. (J.A. 896.) The district court did not evaluate the irreparable harm factor when ruling on the motions for preliminary injunction. *See* Appellants' Br. 97.

Covered entities in Maryland have suffered and, without H.B. 1056, will continue to suffer financial harm, which will negatively impact the availability of health care and affordable medications to a population that live well below the poverty line. (J.A. 310-337.) Not providing services to Maryland's indigent population creates disastrous results. (J.A. 310-337.) For example, manufacturer restrictions on the use of contract pharmacies shuttered the Family Health Centers of Baltimore. (J.A. 334-336.)

Patients rely on pharmacies to provide them with necessary pharmaceuticals. The plaintiffs seek to severely limit covered entities' ability to benefit from the 340B program. This harms the public. The imposition of an injunction would allow manufacturers to impose restrictions on covered entities, which would cause them to lose funding that covered entities can ill afford to lose. (*See* J.A. 310-337.)

The text and purpose of H.B. 1056, which must be construed to be consistent with applicable federal law, Health Occ. § 12-6C-09.1(b), do not require drug manufacturers to sell drugs at 340B discounted prices to any party that is not entitled to receive such discounts under the 340B statute. The 340B program requires sales only to covered entities. H.B. 1056 does not change that. Any harm that the plaintiffs would suffer remains speculative.

Accordingly, the plaintiffs cannot satisfy the remaining preliminary injunction factors.

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Joshua R. Chazen
JOSHUA R. CHAZEN
RYAN R. DIETRICH
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jchazen@oag.maryland.gov
rdietrich@oag.maryland.gov
(410) 576-7058
(410) 576-6995 (facsimile)

Attorneys for Appellees

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,211 words, excluding the parts of the brief exempted by Rule 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Joshua R. Chazen
Joshua R. Chazen

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

| | | |
|---|---|---|
| | * | |
| ABBVIE, INC., *et al.*, | | |
| | * | |
| *Plaintiff-Appellants*, | | |
| v. | * | No. 24-1939 (L) |
| ANTHONY BROWN, *et al.*, | * | |
| *Defendants-Appellees*. | * | |

* * * * * * * * * * * * * *

**CERTIFICATE OF SERVICE**

I certify that, on this 31st day of July, 2026, the Supplemental Brief of Appellees was filed electronically and served on counsel of record who are registered CM/ECF users.

/s/ Joshua R. Chazen
Joshua R. Chazen